Good morning, Judge Schroeder, Judge Noonan, Judge Callahan. My name is David Porter, and I am from the Eastern District of California, Assistant Federal Defender, and I represent the petitioner Inez Tito Lugo. There are two key principles in this case. The first is that the nature of the error, that is, excluding Mr. Lugo from the readback and the video playback, necessarily leads to an incomplete record. The second principle is which party bears the burden of risk, that the error worked a substantial and injurious effect on the jury's verdict. Now, on the first issue, we have the Fisher case. At page 916 of the Fisher decision, written by Judge Trott, he wrote, No record was made of the readback proceedings, thus making it impossible to say definitively or even speculatively that nothing prejudicial occurred. The exact same thing happened in this case. No record was made of the readback proceeding, and thus it's impossible to say with any degree of certainty that nothing prejudicial occurred. Here's the problem that I have in terms of that if it's my understanding in the harmless error analysis that the district court has a right to look at the entire record in making that analysis. And it seems to me that before you get to, you know, this burden that you're talking about, the evidence has got to be in equipoise or whatever the word is. It seems to me, and the judge has to be engraved out. And when the judge is engraved out, then the prosecution arguably must at that point move it out of equipoise or the presumption goes to, in this case, the petitioner. It seemed to me in looking at the record that Judge Carlton did not have graved out. He looked at the whole record, did not have graved out, and said it's harmless error. So if Judge Carlton did not have graved out, how do we get to this equipoise situation that would be advantageous to your client? There should have been graved out in this case. This was a very close case. The jury deliberated over three and a half days. They were only out for two hours before they asked for the videotape to be replayed for them. Then they asked for two major witnesses' testimony to be read back to them, the testimony of the defendant and the testimony of Terry Lugo, who was the 8-year-old daughter who was an eyewitness to the case. And they just wanted to direct, right? No, that's not correct. The clerk's minutes make it clear that they asked for all of the testimony of Inez and all of the testimony of Terry. Now, they did not end up hearing all of Mr. Lugo's testimony because they told the juror the court reporter is reading from her notes. She finished reading either before the cross-examination or the redirect. We're not really sure because the judge says one thing and the court minutes say another. But definitely all of his testimony was not read back. Okay, but we all know that the jury, the error to me here, you know, jurors hear all the evidence in the first instance. We don't know what goes on in the jury room. They can ask for it. They could say, I want to hear one sentence. And, you know, they already heard everything. They could do that and they can call off. The error here is that they didn't get a personal waiver from the defendant, right? Yes. That's the error. That's the error. And then defense counsel in this said they did talk to some of the jurors, but they couldn't get a hold of the court reporter or whatever. And they said, the defense counsel said there's no basis for a hearing, right? That's not correct. We were appointed, the Federal Defendant's Office was appointed at habeas, at the habeas proceedings. This had nothing to do with the defense counsel. This error was not brought to the court's attention until state habeas corpus proceedings. So it wasn't the defense counsel who interviewed jurors and interviewed the court reporter right after the thing happened. Well, there was an objection during, on this record, wasn't there? There was an objection, but it was not fully articulated. The defense attorney said on Monday we'll make a record. No record was made. But the problem is, is that this was done in the court, in the jury deliberation room, without the judge, without defense counsel. The case was on autopilot for 7 hours, while the revetment. Well, if the defendant had personally waived, that would be okay, right? Yes. As long as it was a knowing and valid waiver that was addressed to the defendant. Right. So that's the error. That is the error. Well, let me, you seem to be arguing for principle of law that if there is no, if there is no consent and there is no record, even though there may have been an objection in an effort to make a record and there wasn't any point in it, that we should presume as a matter of law that he wins. And that seems to be where we're going with this. But only on the facts of this case, and I think the specific fact that takes this out of just making it a structural error, kind of automatic reversal, as you're suggesting, is that if Mr. Lugo was present, he could have insisted that his redirect testimony be read. As it was, only a portion of his testimony was re-read to the jury. That presented a very skewed view of his testimony. Well, but all the time, you know, I mean, I remember when I was a trial judge and you come in and you bring people in and you say the jury wants to hear such and such. And then the defense counsel says, well, I want to make sure that you read this because that was our rebuttal of it. And the judge is perfectly within his or her rights to say, no, this is what the jury asked for, that's what the jury is going to get to hear, because they heard all of that. So, yes, he could have asked that, but he might not have gotten that either. He might not have gotten it, but he certainly would have had a very good argument for getting it, because in this case, that redirect testimony was very crucial because Dr. Sean Johnston was claiming that Mr. Lugo had a fixation, that if he could kill his wife, that he would own her forever. And what Mr. Lugo --- Well, you have discretion in the trial, but we reason what the jury wants to hear. So that's not in, you know, and I mean, a defendant could come in and say, well, I want the whole trial reread. There are numerous cases in this Court where the Court has held, yes, the district court has abused its discretion in not following defense counsel's insistence that a certain part of the record be reread because it presents a skewed view of the evidence. The cases are numerous from this Court. We don't have that record. We don't have what you're arguing. Now, isn't it, isn't what you're really arguing ineffective assistance of counsel and not, in not making that record? And so then if you ever are able to make a, you know, that should be an ineffective case in which you have to show prejudice. Judge Sotomayor, I absolutely agree that the defense counsel was ineffective in not having followed through on that objection and making the record. But then you have to show prejudice. Well, then the question is, who bears the burden of risk? And in the Hegler case that the Respondent is relying on very carefully, there was an evidentiary hearing. And each jury that ---- Well, is that the remedy that you're requesting? No. Well, that's what it would seem to me. Let me explain. If we buy your argument, let's say we buy it, why wouldn't we then remand it for an evidentiary hearing, even though the defense counsel said there was no reason for an evidentiary hearing? You want to win outright. Because Hegler makes it clear that it is the burden of the party that is the beneficiary of the error to come forth and show that it didn't have a prejudicial effect. And in that case, each juror recalled the court reporter's readback was professional and that the substance of the readback was not materially different from the actual testimony of the witnesses during trial. That's really kind of turning it on its head, though. What's troubling me here is that we should respond to this. In the Fisher case, which appears to be the closest case to this one, as I read the case, although there's language in it that you could say, well, if the defendant doesn't consent, then that's it. But actually what happened there was that the lawyer, nobody knew that this was happening. It was a secret proceeding. And that's a dimension away from where we are here, where the lawyer was told and said go ahead. That's true. The lawyer knew the jury, knew the reporter, had been there, said it's okay. That's true. I would argue that it's even more crucial in this case where the defense counsel was not the the crucial issue of Fisher that was that not that they didn't have notice, but that they weren't there. And so a proper record couldn't be made. And in this case, that's the same, that same principle applies. Because defense counsel was not there, a proper record could not be made. And the defendant also. That's the way that you read it. Yes. Yes. Okay. I'll reserve the rest of my time. Thank you. Thank you. Good morning. Good morning. May it please the Court. Carlos Martinez from the California Attorney General's Office representing the Appealee. The issue of Appellant's absence from readback and playback begins and ends with Brecht v. Abramson. Here, the defendant, Petitioner, has the burden to show that they're entitled to habeas relief unless there is a substantial actual, I'm sorry, unless they can establish that as a result of actual prejudice. Brecht specifically says that they must establish actual prejudice. And that's at page 637 of that opinion. Is it possible that the court reporter read inaccurate notes? Yes. Is it possible that she or he unduly emphasized some part of the testimony? Yes. Because anything is possible. Well, let me ask you this. Yes. Okay. It seems to me we get into the problem where a judge has graved out and we're in equipoise. That's right. It's hard for me to understand why in this situation that the representatives of, you know, I mean, Mr. Porter is, if he gets it to that point, this is not a very good record for the state if you get to that point. Why didn't the state just go out and talk to at least one juror and put something in evidence to, you know, if you ---- What happened was this. Judge Carlton appointed the Federal Defender, appointed Mr. Porter to interview all of the jurors that he could find and, if he wanted to, could interview the court reporter. Now, he could also investigate the court reporter. Was this a court reporter that had a propensity for emphasizing testimony? Was there any evidence of that? No, none whatsoever. Well, I guess when you get the whole record here, what it seems to me, you know, it's my understanding there that, you know, the representative of the state said when Mr. Porter said there was no reason to have an evidentiary hearing, then they just said, well, hey, Judge Carlton doesn't have grave doubts. Judge Carlton finds it harmless. End of story. Well, that's nice. But now, if you sit here and listen here, you know, Mr. Porter's asking not to go back and have a hearing. He's asking for a reversal because he says it's an equipoise and that you've got the burden at that point and you did nothing. Well, no, Your Honor, what happened was Judge Carlton said this isn't an equipoise. I have no grave doubt. I'm giving you the opportunity, Mr. Porter, to present evidence to me because we are bound by Brecht v. Abramson. And Brecht v. Abramson says you've got to show actual prejudice. In fact, when you're reading Brecht, the Court spends a great deal of time emphasizing that in habeas, habeas is different from direct appeal, and that Chapman requires that we show a reasonable possibility. Here, there's no reasonable possibility. That's not the actual standard. He must show actual prejudice, and he never did that. And the actual prejudice has to stem from what? The actual prejudice is the term of art. It actually is that there is. But in this case, what is the error that the prejudice has? The error that Mr. Porter is emphasizing is that his client was absent during the readback and playback. And even though the Court, his public defender, I believe, or his attorney was — it wasn't a public defender, I'm sorry. It was his attorney, Mr. Masuda. Mr. Masuda waived his own presence because he believed that it was not necessary to be there and it wouldn't result in any type of prejudice that he was going to be concerned about. But you have to take a personal waiver from the defendant if you're the judge, right? No, Your Honor. He doesn't have to take a personal waiver from the defendant. I actually cited a case from the United States Supreme Court, and I believe it's Gagnon. And Gagnon says that by the defendant's own conduct, the defendant waived his presence. I'm sorry. Okay, but he has to — but you're kind of bootstrapping that there. I mean, the law requires that if you want it to be tight, you have the defendant, you have the prosecutor, you have defense lawyer, and you say, hey, if readbacks come up, I would like to just send them into the jury room and handle it. I don't want to be there. You don't want to be there. Does anyone have a problem? And then you ask the lawyers, and then you ask the defendant, and you get a waiver. And what he didn't do — the judge did not do that. That's correct, Your Honor. All right. And then what you're saying — and that's error. But then beyond that, you're just saying because the defendant never objected on Monday, they didn't do anything, that that's somehow — He didn't — he — counsel did object. He didn't follow up on the objection. His objection, I believe, was that there was just a limited testimony that was read to the jury. He wanted the entire testimony. And there is no state law, state case, that requires the judge to actually order the court reporter to read the entire testimony. There is no state case that says that.  The objection is a fairly weak objection. Again, this case turns on Breck v. Abramson. We don't get to the other matters unless the defendant shows actual prejudice, and he hasn't shown it. And he was given the specific opportunity to do that by Judge Carlton because he was appointed — Mr. Porter was appointed to interview all the witnesses that he could find. I assume he did that because that's what the court record says he did. And then thereafter, he didn't ask for an evidentiary hearing. He said that he just wanted to submit the matter on the briefs, and he submitted a brief on it. And Judge Carlton said, well, we're left with this bare record that doesn't support your allegation. Okay. Thank you very much. Thank you. Very briefly. Breck v. Abramson was decided a year before O'Neill v. McAnich. And O'Neill v. McAnich makes it very clear that that is a gloss on Abramson. Abramson is not the final word. I agree that in the majority of the — my run of cases, that the Petitioner would have the burden of showing an injurious effect on the verdict. But in these classes of cases where the error necessarily leads to an incomplete record, it is the beneficiary of the error that has to show — that has to bear the burden of the risk. And what Judge Trott said in Fisher was, does this undermine the fairness of the proceedings? What could Mr. Lugo have done if he were there? He could have said that somewhere during the four hours when his testimony was being read back, he could have said, no, that's not what I said. I object to that. And because the judge wasn't there, there was no way to make a ruling on it, but at least the error could have been preserved for appeal. Okay. Thank you. Thank you. The case is argued and submitted. We'll hear — wow, that got too heavy. The next case is the United States v. Gantt, which is the next case to be argued. Thank you.
judges: Schroeder, Noonan, Callahan